Filed 1/31/24  Riaz v. Kaweah Health Medical Center CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAMREEN RIAZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>KAWEAH HEALTH MEDICAL CENTER et al.,<br><br>    Defendants and Respondents. | F085325<br><br>(Super. Ct. No. VCU291575)<br><br>**OPINION** |

-ooOoo-

APPEAL from judgments of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Samreen Riaz, in pro. per., for Plaintiff and Appellant.

Herr Pedersen & Berglund and Rachele Berglund for Defendants and Respondents Kaweah Health Medical Center and Mark Said, M.D.

Jennifer M. Flores, County Counsel, Kathleen A. Taylor and Stephanie R. Smittle, Deputy County Counsel, for Defendant and Respondent County of Tulare.

Schaeffer Cota Rosen and Andrew K. Whitman for Defendant and Respondent Lloyd Benjamin, M.D.

Hall Prangle & Schoonveld and Jonquil L. Whitehead for Defendant and Respondent Heritage Oaks Hospital.

-ooOoo-

Welfare and Institutions Code section 5150 et seq. authorizes the involuntary detention, evaluation, and treatment of persons who, as a result of a mental disorder, are dangerous or "gravely disabled." Samreen Riaz (plaintiff) alleges she was wrongfully detained for such evaluation and treatment as part of a conspiracy among health care providers and government agencies to (1) prevent her from litigating civil claims against her former employers and (2) retaliate against her for suing those employers and for reporting various alleged crimes. Plaintiff appeals from judgments entered after demurrers were sustained without leave to amend. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a self-represented, nonnative English speaker. Her written submissions are difficult to follow and at times unintelligible. Although her pleadings provide extensive background information, they often assume the reader's familiarity with unstated details. To provide a more complete contextual background, we fill in the informational gaps by taking judicial notice (on our own motion) of the records in three of plaintiff's related appeals: *Riaz v. County of Tulare* et al., F085100; *Riaz v. Family Health Care Network*, F085829; and *Riaz v. Altura Centers for Health*, F085852.

### Background

Plaintiff describes herself as "a Muslim colored, Asian, immigrant of Pakistani descent." (These traits are relevant to claims of discriminatory treatment.) She began practicing dentistry in the Central Valley in approximately 2013. In 2018, plaintiff was terminated from a position of employment with Altura Centers for Health (Altura). Plaintiff alleges she was fired in retaliation for her complaints of "harassment," "privacy breach," and "OSHA violations" at work. Soon afterward, during the latter half of 2018, plaintiff was allegedly "trolled," "harassed," and "stalked" on the Internet by an unknown person or persons.

In January 2019, plaintiff sued Altura for wrongful and retaliatory discharge. At around the same time, plaintiff obtained new employment with Family HealthCare

2.

Network.  Family HealthCare Network is reportedly classified as a "federally qualified health center," and plaintiff refers to this employer by the acronyms FQHC and FHCN.  Her use of the FQHC acronym is often confusing, however, because Altura is also a federally qualified health center.  Plaintiff sometimes refers to Altura as "FQHC," thus making it difficult to know whether she is referencing Altura or Family HealthCare Network.

Plaintiff was allegedly harassed, discriminated against, and "stalked" while employed at Family HealthCare Network.  The alleged harassment was not confined to the workplace.  Plaintiff has given examples of being stopped by the California Highway Patrol (CHP) and receiving speeding tickets.  She has alleged the CHP became involved in a large-scale conspiracy against her "due to [her] complaint to FQHC."

Plaintiff further alleges the harassment during her time at Family HealthCare Network "was so severe" and "constant" that she began seeing a psychiatrist.  According to her own pleadings, she was diagnosed with having "[d]elusional disorders."  The diagnosis was reportedly made in October 2019.  Although her psychiatrist declared her capable of continuing to work on a modified basis, her employment was terminated that same month.  Plaintiff claims to have been fired for refusing to tolerate "harassment" and for "[c]omplaining in writing to FQHC."  She later sued Family HealthCare Network for wrongful termination and various other alleged torts.

After losing her job at Family HealthCare Network, plaintiff had difficulty finding employment.  She also continued to experience what she perceived as various forms of "harassing and stalking" in her daily life.  Plaintiff has professed to believing that unknown/unnamed conspirators who made her "a target of harassment, stalking, vandalization, [and] civil right[s] violation[s]" are responsible for "destroying [her] career."

On July 15, 2020, plaintiff went to the courthouse in Visalia to attend legal proceedings.  (Two motions were scheduled to be heard that day in her lawsuit against

3.

Altura.) She encountered a sheriff's deputy (Deputy Rockholt) at the security checkpoint. Deputy Rockholt instructed plaintiff to remove her shoes and allegedly said, "We want to see your toes." Plaintiff was offended and submitted a written complaint to the sheriff's department. She accused Deputy Rockholt of discrimination, making "sexual comments," and being "involved in harassment, stalking, and retaliation."

On July 24, 2020, plaintiff returned to the Visalia courthouse and had another encounter with Deputy Rockholt. This time he allegedly pointed at her when she entered the building. Plaintiff filled out another complaint form, now alleging Deputy Rockholt was attempting to discourage her from attending court proceedings.

Following the second incident involving Deputy Rockholt, strangers allegedly began pointing at plaintiff in public places. In her words, she became a "regular victim of pointing finger at her face by random stalker[s] on street," and even during job interviews. In essence, Deputy Rockholt is alleged to have orchestrated a campaign of finger-pointing "harassment" carried out by unknown conspirators. Plaintiff later sued the County of Tulare and Deputy Rockholt because of these incidents.

Between July and August 2020, plaintiff sent e-mails to the Tulare County Board of Supervisors, the Tulare County Grand Jury, the United States Department of Homeland Security, and other government agencies. These communications detailed allegations of stalking and harassment dating back to 2018. Plaintiff was also in frequent contact with the City of Visalia and its police department, which led to the events at issue herein.

*The Present Case—Facts and Allegations*

Between 2019 and 2020, plaintiff filed approximately 50 reports with the City of Visalia Police Department regarding, in her words, "incidents of harassment, vandalism, stalking, trolling, and privacy intrusion." As time passed, she became increasingly frustrated with the police department's lack of progress in investigating and solving the alleged crimes. On July 22, 2020, plaintiff contacted the Visalia city manager to request

4.

"an internal investigation and oversight of Visalia police misconduct for not investigating whistleblower retaliation."

On July 30, 2020, plaintiff submitted written complaints to the City of Visalia Police Department, the mayor of Visalia, and members of the city council. These documents set forth in detail her belief in the existence of a conspiracy being carried out "in such an organized way [that it] is not possible without City officials' involvement." Plaintiff concluded by alleging, "City has organized Stalking system which is run by powerful criminals with the consent of Law enforcement. My civil rights has been violated/harassed /stalked/vandalization, violence against me/my family and dealt with police [] misconduct." (*Sic*.)

On the morning of August 12, 2020, a Visalia police officer contacted plaintiff by phone and said he was "coming to [her] house in 20 minutes to talk to [her] about the … organized violent harassment and stalking incident reports." (Unless otherwise noted, all quotes are taken from the operative complaint.) When the officer arrived, he was accompanied by two "crisis workers" from the Tulare County Health and Human Services Agency (HHSA): Ernest Ceballos and a woman identified only as "Lupee." The officer engaged plaintiff in conversation, and she recounted details of the "many incidents [s]he reported." In doing so, plaintiff explained how multiple vehicles had been used to commit the stalking and harassment: "Estes truck, United label truck, FedEx Truck, American ambulance, CHP special service, and fire dept vehicles, FHCN bus and their ad on Visalia transit bus, Sherman William trucks, Lincoln and grey silver color car, Trailor labeled Dera, Fashionable pets, Lady chicken, abbey Wilson van, Snap-on, U-Haul trailer or truck, etc." (*Sic*).

The officer allegedly told plaintiff the police "cannot investigate unless we know if your mental state is ok." He then pressured her to voluntarily submit to a mental health evaluation. Plaintiff agreed to think it over, and the officer and HHSA workers said they

5.

would come back in a few hours. While they were gone, plaintiff sent messages to the officer by e-mail and phone asking him not to return.

The same three people returned to plaintiff's residence that afternoon, now accompanied by a second Visalia police officer. The officers informed plaintiff she was being detained pursuant to Welfare and Institutions Code section 5150. Plaintiff was then transported against her will to the emergency department at Kaweah Health Medical Center in Visalia.

Quoting from an "HHSA document," plaintiff alleges the detention and evaluation were "'requested by [the] Visalia police department.'" The document allegedly describes plaintiff as having "shown a decline in [s]ocial functioning with significant intrusion into civil service by making numerous complaints without foundation[,] [t]herefore [s]howing grave, disability in [her] functioning.'" (Boldface omitted.) Plaintiff further alleges that a Visalia police report states, "'The basis of 5150 hold is she believed to be gravely disabled'" and "'is negatively impacting numerous individuals and agencies with her paranoia and claims.'" (Sic.) (Boldface omitted.)

Plaintiff contends the police detained her without probable cause and "for a pretextual reason." The HHSA worker identified as Lupee is alleged to have "conspired with the [p]olice department" in furtherance of efforts "to stop the plaintiff from bringing the grievances forward and destroy [her] credibility to testify to the Court." However, the pleadings admit Lupee "did not interact with [p]laintiff."

The events at Kaweah Health Medical Center occurred during a roughly 24-hour period between August 12 and 13, 2020. While there, plaintiff was allegedly under the care of defendant Mark Said, M.D. (Dr. Said). The pleadings allege Dr. Said "held the plaintiff without her will and staged stalking theater acts within the facility in order to inflict emotional trauma on the plaintiff." (Sic.) The "staged" acts were allegedly performed by "recruited patients" and hospital staff who engaged in behavior that caused plaintiff to feel frightened, upset, and intimidated.

6.

Plaintiff was initially permitted to keep her mobile phone while awaiting a psychiatric evaluation. She used it to contact an attorney who was representing her in the lawsuit against Altura (the attorney later withdrew from the case). Plaintiff also placed several 911 emergency calls to report "'harassment and having been taken away from her home and placed in the medical facility." During her second day at Kaweah Health Medical Center, hospital staff confiscated her phone "due to calling 911 and the crisis office multiple times."

Plaintiff contends the hospital and Dr. Said "went out of their way to conspire and give [her] such a horrible experience and punished [her] for bringing to Tulare [C]ounty grievances regarding law enforcement not investigating whistleblower retaliation and obstruction in court proceedings." Dr. Said is alleged to have "held the plaintiff without her consent, examined and evaluated her without her will, for a pretextual reason and willful negligent in his practice and fail to perform his medical duty ethically including … unlawful forceful transfer to mental ward inpatient facility." Plaintiff further alleges Dr. Said "trusted police words and established unconsented Dr and patient relationship … by holding her … without a probable cause" even though she "did not meet the criteria of a gravely disabled person."

Dr. Said allegedly "did not check if the plaintiff was in fact gravely disabled and [went along] with police words and documented [c]harts negligently lead[ing] to transfers of the plaintiff to [another facility]." However, plaintiff also claims to have discussed her conspiracy theories with Dr. Said. He is alleged to have responded sarcastically when plaintiff insisted she was "in good health." Other allegations state Dr. Said knew plaintiff was not gravely disabled and "not a candidate for an inpatient substandard suicidal patient facility named Heritage Oak."

On the afternoon of August 13, 2020, plaintiff was transferred from Kaweah Health Medical Center to Heritage Oaks Hospital in Sacramento. While in Sacramento, plaintiff was under the care of psychiatrist Lloyd Benjamin, M.D. (Dr. Benjamin). The

7.

pleadings allege Heritage Oaks Hospital and Dr. Benjamin are "responsible for unlawful 5150 hold and transfer of [p]laintiff for pretextual retaliatory, discriminatory, and harassment purposes." Dr. Benjamin is alleged to have "evaluated the plaintiff without her consent knowing her hold was [u]nlawful and involuntary based on fraudulent 5150 placement."

On August 15, 2020, Dr. Benjamin certified an extension of plaintiff's detention and treatment pursuant to Welfare and Institutions Code section 5250. In the original complaint, plaintiff alleged Dr. Benjamin stated, in the notice of certification, "[Y]ou have shown declined in social functioning with significant intrusion into civil services by making numerous complaints without foundation, therefore, showing grave disability in your functioning." (*Sic*.) Plaintiff later deleted the quoted statement from the operative complaint, but she attached a copy of the referenced document to a separate motion.

According to the pleadings, the extended hold was ultimately "reverse[d]" by another doctor at Heritage Oaks Hospital, "Dr. Boparai," who determined that further treatment was "not necessary." Plaintiff was discharged from the hospital on or about August 17, 2020. On or about August 21, 2020, plaintiff sought to obtain from the Tulare Superior Court a "hearing for relief from [f]irearms prohibition," i.e., a "hearing date to contest losing the right to a firearm." (See Welf. & Inst. Code, § 8103, subd. (g)(1)(A) ["A person who has been certified for intensive treatment under Section 5250 … shall not own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase, any firearm for a period of five years"].)

In January 2021, plaintiff filed a claim with the City of Visalia pursuant to the Government Claims Act (Gov. Code, § 810 et seq.) regarding the above-described events of August 2020. The claim was "rejected" on March 9, 2021. Plaintiff subsequently filed a related civil lawsuit in the United States District Court for the Eastern District of California (the "federal court action"). (*Riaz v. Henry* (E.D.Cal., Jan. 3, 2023, No. 1:21-CV-00911-ADA-SKO) [2023 U.S. Dist. LEXIS 719, pp. *2-*7; 2023 WL 24218, pp. *1-

8.

*2] [order granting in part and denying in part motions to dismiss the complaint for failure to state a claim].)

The appellate record in this case includes copies of the complaint and other documents filed in the federal court action. On our own motion, pursuant to Evidence Code sections 452, subdivision (d), and 459, we take judicial notice of the following facts. First, the County of Tulare and HHSA worker Ernest Ceballos are both named as defendants in the federal court action, as are the City of Visalia and three Visalia police officers. Second, plaintiff (through legal counsel) asserted claims in the federal court action against the County of Tulare pursuant to title 42 United States Code section 1983 (section 1983) and the Americans with Disabilities Act of 1990 (ADA; 42 U.S.C. § 12101 et seq.). (*Riaz v. Henry*, *supra*, 2023 U.S. Dist. LEXIS 719, p. *7 [2023 WL 24218, p. *2].) Those claims allege(d) conduct by HHSA personnel and other county officials whose names are/were unknown to plaintiff and who are/were referenced in the complaint as "DOES 1 through 25." Third, the County of Tulare was unsuccessful in moving to dismiss the section 1983 cause of action for failure to state a claim. (*Id.* at pp. *22-*27 [2023 WL 24218, pp. *7-*8]; see *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7 [courts may take judicial notice of "the truth of the results reached … in documents such as orders, statements of decision, and judgments"].) Fourth, the County of Tulare's motion to dismiss the ADA claim was granted with leave to amend. (*Riaz v. Henry*, *supra*, 2023 U.S. Dist. LEXIS 719, pp. *27-*32 [2023 WL 24218, pp. *9-*10].) Fifth, the federal court action remains active and pending as of January 2024.

***Procedural History***

On May 4, 2022, plaintiff filed a complaint in the Tulare Superior Court against (1) Kaweah Health Medical Center and Dr. Said; (2) Heritage Oaks Hospital and Dr. Benjamin; and (3) "Tulare County Health & Human Services Agency [¶] Lupee crises worker in her individual and official capacity." (*Sic.*) Both the County of Tulare and the trial court interpreted the pleading to mean the County of Tulare had been named

9.

as a defendant but erroneously sued as "Tulare County Health & Human Services Agency." We will collectively refer to the County of Tulare and "Lupee" as the "County defendants." We will collectively refer to Kaweah Health Medical Center, Dr. Said, Heritage Oaks Hospital, and Dr. Benjamin as the "healthcare defendants."

Plaintiff's original complaint purported to assert 18 causes of action. They were labeled as follows: (1) "Fraud claim"; (2) "UCL claim"; (3) "Medical Malpractice"; (4) "Willful and Wanton Negligence/Professional Negligence"; (5) "Unprofessional Conduct (Violation of Business and Professional Code)"; (6) "Vicarious Liability"; (7) "Defamation"; (8) "Deprivation of Civil Rights under 51 (Unruh Act)"; (9) "Personal Injury"; (10) "Intentional Infliction of Emotional Distress"; (11) "Retaliation in Violation of Labor Code § 1102.5/Health & Safety Code sec. 1278.5(b)(1)"; (12) "For Disability Discrimination in Violation of Government [¶] /FEHA Act/The Americans With Disabilities Act–ADA Title II and the Rehabilitation Act26 … Section 1983"; (13) "Assault and Medical Battery"; (14) "False Imprisonment claim"; (15) "Defendants In Violation 42 U.S Code § 1983- Civil action for deprivation of rights"; (16) "Civil Harassment Ca Civ. Code 527.6"; (17) "Hate crime / Terrorism"; and (18) "Conspiracy."

The complaint did not explain which causes of action were being asserted against which defendants.

On June 7, 2022, the County defendants moved to have plaintiff declared a vexatious litigant pursuant to Code of Civil Procedure section 391.

On June 29, 2022, plaintiff mailed a government tort claim (see Gov. Code § 911.2) to the Tulare County Board of Supervisors. The $1 million claim was based on the events of August 12, 2020. The claim referenced "Super VCU 291575," i.e., the Tulare Superior Court case number for the present lawsuit. In a handwritten attachment to the claim form, plaintiff wrote, "Per [counsel for Kaweah Health Medical Center and Dr. Said,] K.H & staff are employee of Govt." (*Sic*.)

10.

We note plaintiff's apparent attempt to comply with the Government Claims Act in late June 2022 is not alleged in her original or amended complaint. Plaintiff's operative complaint and opposition to the County defendants' demurrer vaguely alleges that a "liability claim compliant with Tort act" (*sic*) was filed on June 16, 2022, with the "City of Visalia." The claim served upon the County of Tulare on June 29, 2022 (and received July 1, 2022) is attached to an attorney declaration in the record on appeal. Also attached is the County of Tulare's written notice to plaintiff, dated July 12, 2022, stating her claim was untimely under Government Code sections 901 and 911.2. The notice further advised that her only recourse was to apply for leave to present a late claim pursuant to "Sections 911.4 to 912.2, inclusive, and Section 946.6 of the Government Code."

On July 12, 2022, the trial court denied the vexatious litigant motion as premature. The ruling explained that although plaintiff had initiated 19 separate legal proceedings, seven of them were small claims actions, which are outside the scope of the vexatious litigant statute. (Code Civ. Proc., § 391, subd. (b)(1).) Five other cases involved "civil harassment petitions," which the trial court also disregarded. The seven remaining cases, including the present matter, were still active. (See *ibid*. [qualifying cases must "have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing"].)

On July 19, 2022, Dr. Benjamin filed a demurrer to the complaint and a motion to strike various portions thereof, including a claim for punitive damages. The County defendants filed their own demurrer three days later, on July 22, 2022.

Dr. Benjamin's demurrer was scheduled to be heard on August 16, 2022. Plaintiff's opposition was due nine court days prior to the hearing, i.e., on or about August 3, 2022. (Code Civ. Proc., § 1005, subd. (b).) Plaintiff failed to meet the deadline. She filed an untimely, 52-page opposition to Dr. Benjamin's demurrer on August 8, 2022. In his reply to the same, Dr. Benjamin argued the untimely filing was

11.

"not an opposition to [the] [d]emurrer at all," but rather "a substantial rewrite of nearly all of the 18 causes of action set forth in [the original] [c]omplaint."

The trial court issued an eight-page tentative ruling on Dr. Benjamin's demurrer, which it adopted in full after neither side requested oral argument. The demurrer was sustained without leave to amend as to the causes of action for defamation and medical malpractice based on the one-year statute of limitations set forth in Code of Civil Procedure sections 340, subdivision (c), and 340.5, respectively. The demurrer was also sustained without leave to amend as to intentional infliction of emotional distress (IIED) under the principle that claims labeled as intentional torts should be treated as medical malpractice claims if the gravamen of the allegations is professional negligence. (See *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 347–354 [applying one-year statute of limitations to hospital patient's claims of battery and IIED].) Plaintiff's claims of professional negligence, "Unprofessional Conduct," vicarious liability, personal injury, and conspiracy were ordered dismissed without leave to amend for either not constituting separate causes of action or being duplicative of the medical malpractice claim. The demurrer was otherwise sustained *with* leave to amend, and the motion to strike was denied as moot.

On August 25, 2022, plaintiff filed the operative 121-page amended complaint. On page 120, plaintiff acknowledged conspiracy "is not a separate tort." Plaintiff also deleted the number "6" from the heading labeled "Vicarious Liability," but she otherwise reasserted the same remaining 16 causes action without specifying which claims were being asserted against which defendants. Other notable revisions included deletion of "Labor Code § 1102.5" from what was still labeled as the 11th cause of action. The purported 12th cause of action was renamed "Disability Discrimination In Violation of The Americans with Disabilities Act," and earlier references to "FEHA" were removed.

In conjunction with her amended complaint, plaintiff also filed (on the same date) a motion for reconsideration of the order sustaining part of Dr. Benjamin's demurrer

without leave to amend. The motion raised various tolling arguments concerning the statutes of limitations. The motion was scheduled for September 27, 2022. Dr. Benjamin filed a timely opposition.

On September 12, 2022, the County defendants filed a demurrer to the amended complaint. (The earlier demurrer was deemed moot in light of the amended pleading.)

On September 26, 2022, Dr. Benjamin demurred to the amended complaint and also filed a motion to strike portions of the same.

On September 27, the trial court denied plaintiff's motion for reconsideration of the ruling on Dr. Benjamin's demurrer to the original complaint. On the same date, demurrers to the *amended* complaint were filed by Heritage Oaks Hospital, Kaweah Health Medical Center, and Dr. Said.

On September 28, 2022, plaintiff filed an opposition to the County defendants' demurrer to the amended complaint.

On October 4, 2022, plaintiff filed an improper notice of appeal regarding the ruling on Dr. Benjamin's demurrer to the original complaint and the denial of her motion for reconsideration.

All demurrers to the amended complaint were scheduled to be heard on October 25, 2022. Therefore, the deadline for plaintiff to file opposition papers was October 12, 2022. (See Code Civ. Proc., § 1005, subd. (b).) Plaintiff did not file any oppositions to the demurrers of the healthcare defendants.

On October 14, 2022, Kaweah Health Medical Center and Dr. Said filed a notice of plaintiff's failure to oppose their demurrer. On October 18, 2022, Heritage Oaks Hospital filed a notice of plaintiff's failure to oppose its demurrer. On October 20, 2022, Dr. Benjamin filed a notice of plaintiff's failure to oppose his demurrer.

On October 24, 2022, the trial court issued a tentative ruling on the demurrers. Plaintiff did not request oral argument. Instead, she filed what was labeled as a "Request for judicial notice in support of Plaintiff First Amended Complaint and pending appeal in

13.

opposition to defendant demurrer, motion to strike and in response to defendant request for judicial notice of Plaintiff." (*Sic*.) The filing consisted of four "exhibits." "Exhibit A" was a copy of the notice of appeal filed 20 days earlier. "Exhibit B" was a copy of plaintiff's Civil Case Information Sheet filed with this court on October 11, 2022. "Exhibit C" was a copy of plaintiff's previously filed motion for reconsideration. "Exhibit D" consisted of multiple documents including a "Notice of Motion and Motion of Continuance of the Hearing," i.e., the demurrer hearing scheduled for the next day.

Plaintiff's request for a continuance was based on the contention she had been busy during the past month working on matters concerning her lawsuits against Altura and Family HealthCare Network. Plaintiff further alleged, "Defendant Heritage Oak and their employees' demurrer and motion to strike on Fac are based on a similar matter related to Defendant Benjamin, an employee of Heritage Oak hospital which is already pending in appeal at appeal court 5th district filed on Oct 4 22." The final document in "Exhibit D" was a copy of an order issued that day (Oct. 24, 2022) by this court giving plaintiff 20 days to file a brief explaining why the appeal should not be dismissed "as taken from a nonappealable order." (The appeal was ultimately dismissed for that reason.)

The motion for continuance was evidently denied, though it is unclear whether the denial was express or implied. The trial court adopted its 14-page tentative ruling and sustained the demurrers of all healthcare defendants without leave to amend. The County defendants' demurrer was sustained without leave to amend as to all causes of action except the section 1983 claim. The ruling emphasized, "[The section 1983 claim] is the only cause of action for which the Court has granted leave to amend and leave to amend is only granted as to allegations directed at the County and HHSA employee Lupee." (Underscoring omitted.) All other claims against the County defendants were deemed untimely under, and barred by, the Government Claims Act.

As to the healthcare defendants, the causes of action for medical malpractice and defamation were held time-barred under the applicable one-year statute of limitations. (See Code Civ. Proc. §§ 340, subd. (c) [defamation], 340.5 [negligence/medical malpractice].) The generically labeled claims (e.g., "Unprofessional Conduct") were held to either not constitute legal causes of action or to be duplicative of the medical malpractice claims. For those claims pleaded as intentional torts, the court relied on *Larson v. UHS of Rancho Springs, Inc.*, *supra*, 230 Cal.App.4th 336 and other authorities holding that the statute of limitations is determined by "'the nature or gravamen of the claim, not the label or form of action the plaintiff selects.'" (Quoting *Larson*, at p. 347.) The intentional tort claims and federal civil rights claims were said to be based upon and "inextricably intertwined with" the professional negligence claims, and therefore barred by the one-year statute of limitations.[1] All remaining causes of action were dismissed for failure to state cognizable claims for relief.

Judgments of dismissal were entered as to the healthcare defendants in November 2022.

The ruling on the County defendants' demurrer was silent regarding the deadline to file a second amended complaint. Therefore, pursuant to rule 3.1320(g) of the California Rules of Court, it was due "within 10 days" of the order granting leave to amend. "[T]he time so given runs from the service of notice of the decision or order." (Code Civ. Proc., § 472b.) The order was served upon the parties by mail on October 25, 2022. Plaintiff did not file an amended pleading within the allotted time.

On November 10, 2022, the County defendants filed an ex parte application for a dismissal with prejudice based on plaintiff's failure to timely file a second amended complaint. (See Code Civ. Proc., § 581, subd. (f)(2); Cal. Rules of Court, rule

---

[1]Although the trial court included the false imprisonment claim in this analysis, false imprisonment is subject to a one-year statute of limitations regardless of whether it occurs in a medical malpractice context. (Code Civ. Proc., § 340, subd. (c).)

15.

3.1320(h).)  The application was heard and granted on November 14, 2022, and a judgment of dismissal was entered the same day.

Plaintiff filed a timely notice of appeal as to all judgments of dismissal.

**DISCUSSION**

**I.      Standard of Review**

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory."  (*T.H. v. Novartis Pharmaceuticals Corp*. (2017) 4 Cal.5th 145, 162.)  However, "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer."  (*Martin v. Bridgeport Community Assn.*, *Inc.* (2009) 173 Cal.App.4th 1024, 1031.)  "We will affirm if there is *any* ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." (*Ibid.*, italics added.)

"[A] demurrer 'admits the truth of all material factual allegations in the complaint …; the question of plaintiff's ability to prove those allegations, or the possible difficulty in making such proof does not concern the reviewing court.'  [Citations.]"  (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 922.)  The complaint is liberally construed, but no weight is given to "'contentions, deductions or conclusions of fact or law'" therein.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The complaint may also be read "as if it included matters judicially noticed."  (*Bohrer v. County of San Diego* (1980) 104 Cal.App.3d 155, 164.)

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment.  The plaintiff bears the burden of proving an amendment could cure the defect."  (*T.H. v. Novartis Pharmaceuticals Corp*.,

16.

*supra*, 4 Cal.5th at p. 162.)  "The right to amend is properly denied when it is obvious that plaintiff is seeking the legally impossible."  (*Kenworthy v. Brown* (1967) 248 Cal.App.2d 298, 303.)  The abuse of discretion standard applies to a trial court's denial of leave to amend.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  The decision to order a dismissal after leave to amend is granted but the plaintiff fails to amend within the time allowed is also reviewed for abuse of discretion.  (See *Cano v. Glover* (2006) 143 Cal.App.4th 326, 329.)

## II. Claims Against the County Defendants

### A. State Law Claims

#### 1. Overview

"As a general rule, no suit for money or damages may be brought against a public entity [or its employees] until a written claim, known as a government [tort] claim, is presented to and rejected by that entity."  (*Hernandez v. City of Stockton* (2023) 90 Cal.App.5th 1222, 1230; see Gov. Code, § 950.2.)  As set forth in Government Code section 910, the claim must provide the following information:

> "(a) The name and post office address of the claimant.

> "(b) The post office address to which the person presenting the claim desires notices to be sent.

> "(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

> "(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

> "(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

> "(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the

17.

basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

A government tort claim "shall be presented … not later than six months after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).) An application to present a late claim may be submitted to the public entity "within a reasonable time not to exceed one year after the accrual of the cause of action." (*Id*., § 911.4, subd. (b).) Failure to present a timely claim or obtain permission to submit a late claim ordinarily precludes the claimant from pursuing the alleged cause of action in court. (*Id*., §§ 945.4, 946.6, 950.2.)

If an application to present a late claim is denied by the public entity, the claimant may petition for a court order excusing him or her from the claim presentation requirement. (Gov. Code § 946.6, subd. (a).) "The petition for relief must state that an application under Government Code section 911.4 was made to the public entity and was denied or deemed denied, state the reason for failure to timely present the claim as required by Government Code section 911.2, and state the information required by Government Code section 910." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 63, citing Gov. Code, § 946.6, subd. (b).) However, courts have no jurisdiction to grant relief from noncompliance unless the plaintiff submitted the application to present a late claim within the one-year deadline. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1221; *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1779; see Gov. Code, § 946.6, subd. (c).)

### 2. *Applicability of Claim Presentation Requirement*

The claim presentation requirement applies to all claims for money or damages, including claims asserted pursuant to the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1167; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 763–764.) Conversely, "the

18.

general rule [is] that the claims statutes do not impose any requirements for nonpecuniary actions, such as those seeking injunctive, specific or declaratory relief." (*Loehr v. Ventura County Community College Dist*. (1983) 147 Cal.App.3d 1071, 1081.) The exemption for nonpecuniary claims does not apply unless the cause of action seeks no money/damages or, according to some authorities, if only "'incidental money damages are sought.'" (*Gatto*, at p. 762.) Other cases hold "the government claim requirement applies to any monetary claim even if it is merely incidental to other relief sought." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497, citing *TrafficSchoolOnline*, *Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742.)

In her operative complaint, plaintiff cites Government Code section 905 for the proposition that "[m]atters related to [a] provision of law under the Welfare Code [*sic*] [are] [e]xempt from the tort compliance requirement." In her briefing on appeal, she contends "the court make an errors and abuse discretion when failed to recognize all causes of action against all defendants stemmed from the unlawful application of Welfare code and were exempt from the Tort compliance requirement." (*Sic*.)

We understand the argument to be that Government Code section 905 allegedly recognizes an exception for causes of action arising from, or having some connection to, matters governed by the Welfare and Institutions Code. Plaintiff reasons that because defendants relied on Welfare and Institutions Code section 5150 to detain her, any cause of action arising from or relating to the detention is exempt. She either misreads or misunderstands the statutory language.

Under Government Code section 905, subdivision (e), there is no claim presentation requirement for "[a]pplications or claims for any form of public assistance under the Welfare and Institutions Code or other provisions of law relating to public assistance programs, and claims for goods, services, provisions, or other assistance rendered for or on behalf of any recipient of any form of public assistance." This

19.

exemption is clearly limited in scope to matters concerning the receipt of government benefits in the context of a welfare program and has no relevance to plaintiff's claims. Therefore, the exemption alleged in her pleadings is inapplicable as a matter of law.

Plaintiff's opening brief also contends that "[e]quitable[,] [i]njunctive and declaratory relief requested in FAC is exempt from tort-compliant requirements." This undeveloped argument fails to demonstrate reversible error. The complaint alleges plaintiff "has sustained and continues to sustain a substantial loss in past, present, and future earnings, career opportunities, bonuses, and other employment benefits" because of defendants' allegedly tortious conduct. Besides seeking "general economic and non-economic damages," "special damages," and "civil penalties," the complaint includes a lengthy section on punitive damages.

The pursuit of monetary recovery is more than "incidental" to plaintiff's requests for injunctive relief. (See, e.g., *Loehr v. Ventura County Community College Dist.*, *supra*, 147 Cal.App.3d at pp. 1081–1082.) To the extent she has pleaded otherwise cognizable state law claims, we conclude all but one is subject to the claim presentation requirements of the Government Claims Act. The exception is the purported 16th cause of action, labeled "Civil Harassment Ca Civ, Code 527.6" (*Sic*.)

"Code of Civil Procedure section 527.6 provides a specialized procedure for a petitioner who has suffered harassment within the meaning of the statute to expeditiously seek a limited judicial remedy—injunctive relief to prevent threatened future harm. … A petitioner who also desires retrospective relief in connection with the same underlying conduct, such as tort damages, must do so separately." (*Olson v. Doe* (2022) 12 Cal.5th 669, 673.) Therefore, a cause of action under this statute is not subject to the claim presentation requirement of the Government Claims Act. But this does not mean the demurrer was erroneously sustained.

Code of Civil Procedure section 527.6 establishes a petitioning procedure that requires the use of forms created by the Judicial Council of California. "[C]urrent law

20.

requires that '[t]he petition and response forms … be simple and concise, and their use by parties in actions brought pursuant to [section 527.6] *is mandatory.*" (*Olson v. Doe*, *supra*, 12 Cal.5th at p. 678, quoting Code Civ. Proc., § 527.6, subd. (x)(1), italics added). Because plaintiff's attempt to seek relief under this statute was procedurally defective, the demurrer was properly sustained.

### 3. *Plaintiff's Claims Are Time-Barred*

#### a. Accrual

"'Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. (Gov. Code, § 901.)'" (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906.) "A cause of action ordinarily accrues when the wrongful act occurs, the liability arises, and the plaintiff is entitled to prosecute an action." (*Ovando v. County of Los Angeles*, *supra*, 159 Cal.App.4th at p. 66.) "'A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." [Citations.]'" (*Ibid.*) Put differently, the accrual point is "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, [i.e.,] that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)

The complaint alleges plaintiff suspected injury caused by the County defendants' wrongdoing in August 2020, essentially while the subject events were happening. Plaintiff argues the detention and evaluations carried out pursuant to Welfare and Institutions Code section 5150 et seq. were done without probable cause. Plaintiff maintains she was of sound mind at the time, and also admits to calling 911 from the hospital "to report harassment, civil rights violation, and abduction."

Paragraph 355 of the complaint alleges plaintiff "suffered harm and lost her civil rights in the form of Fire Arm Prohibition due to [the involvement of the County

21.

defendants and healthcare defendants] in the illegal hold." In the next paragraph, plaintiff admits that on August 21, 2020, she attempted to schedule a court hearing "to contest losing the right to a firearm." This is further proof, on the face of the pleadings, that her claims accrued approximately one year and eight months prior to the filing of this lawsuit in May 2022.

At the absolute latest the accrual point would be January 2021. That is when, according to page 6 of the complaint, plaintiff "filed a claim with the [C]ity of Visalia related to [the] 5150 incidents."

### b. Untimeliness

"Compliance with the claim requirement is a condition precedent to suing the public entity. 'Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action.'" (*Rubenstein v. Doe No. 1*, *supra*, 3 Cal.5th at p. 906.) Plaintiff's complaint does not allege compliance. It admits *noncompliance* by attempting to justify the failure to present a government tort claim to the County of Tulare.

The complaint alleges, "The county is well aware that Plaintiff is in compliance of govt tort act as she filed a claim with the city of Visalia related to 5150 incidents about Jan 13 21." (*Sic*.) The contention is misguided. "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.)

"The purpose of the claims statutes is not to prevent surprise, but 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" (*City of Stockton v.*

22.

*Superior Court* (2007) 42 Cal.4th 730, 738.) Plaintiff was obligated to file a timely claim with the County of Tulare explaining what it and/or its employees did wrong and how plaintiff was injured by such wrongdoing. The filing of a claim with the City of Visalia concerning the actions of Visalia police officers did not satisfy the obligation. (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991 [claimant bears the burden of ensuring the claim is presented to the appropriate public entity].) Although courts recognize a substantial compliance doctrine, the doctrine requires "*some* compliance with *all* of the statutory requirements." (*City of San Jose v. Superior Court*, 12 Cal.3d at pp. 456–457.) Plaintiff did not meet this standard.

Plaintiff's reliance on Government Code section 946.6 is entirely misplaced. As discussed, this statute authorizes a petition for a court order excusing noncompliance with the claim presentation requirement. The complaint quotes from a subdivision discussing the grounds of "mistake, inadvertence, surprise, or excusable neglect." (Gov. Code, § 946.6. subd. (c)(1).) However, the petition must state that (1) an application to present a late claim was made to the public entity pursuant to Government Code section 911.4 and (2) the application "was denied or deemed denied." (*Id.*, § 946.6, subd. (b)(1).)

The complaint does not allege that an application was filed with the County of Tulare pursuant to Government Code section 911.4. Moreover, as indicated by the demurrer ruling, plaintiff never filed a Government Code section 946.6 petition with the trial court. The deadline to submit an application to file a late claim is one year (*id.*, § 911.4, subd. (b)), and meeting that deadline is a prerequisite to relief under Government Code section 946.6 (*id.*, subd. (c)).

In summary, the complaint does not allege compliance with the requirements of the Government Claims Act. To show the defect could be cured, an appellant "must identify some legal theory or state facts that can be added by amendment to change the legal effect of his or her pleading." (*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239,

1251; accord, *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.) Plaintiff has not met her burden.

### 4. *Plaintiff's Tolling Arguments Fail*

The complaint includes tolling contentions based on "Emergency Rule No. 9" and alleged mental incapacity. We conclude the trial court properly rejected both arguments.

### a. **Emergency Rule 9**

The Judicial Council of California's Emergency Rule 9 (Emergency Rule 9) was issued during the COVID-19 pandemic. "As originally adopted on April 6, 2020, Emergency rule 9 tolled all statutes of limitation for civil causes of action until 90 days after the Governor declared that the state of emergency related to the COVID-19 pandemic is lifted." (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 401.) In May 2020, the rule was amended to state, in pertinent part: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." (Cal. Rules of Court, Appendix I: Emergency Rules Related to COVID-19, rule 9(a).)

The Judicial Council has explained that Emergency Rule 9 "does not apply to time limits on the submission of claims to government entities, such as those under Government Code section 911.2." (Circulating Order Mem. to the Judicial Council of Cal., No. CO-20-09, May 22, 2020, p. 6, fn. 17.) As such, plaintiff's reliance upon Emergency Rule 9 is misplaced. And due to the length of time between accrual of her claims in August 2020 and the filing of her lawsuit in May 2022, Emergency Rule 9 would be of no help even it was applicable.

### b. **Alleged Mental Incapacity**

In calculating the one-year deadline to apply for leave to present a late government tort claim, any period during which the claimant was "mentally incapacitated" and did

not have "a guardian or conservator of his or her person" is not counted. (Gov. Code, § 911.4, subd. (c)(1).) Pages 8 through 10 of the operative complaint include confusing arguments regarding mental capacity that may or may not relate to plaintiff's alleged diagnosis in October 2019 of having "delusional disorders." However, page 105 of the complaint alleges the psychiatrist who made the diagnosis also certified that she was able to continue practicing dentistry if her schedule was modified "to work 2 days one week and alternate with 3 days a week." Plaintiff's mental incapacity argument is unclear from both the pleadings and her appellate briefing.

"[T]he type of disability which justifies relief … on the grounds of incapacity is an all-encompassing disability which prevents the claimant from even authorizing another to file a claim for the claimant." (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1384.) As the trial court noted in its demurrer ruling, "'a person who is adjudged mentally ill and in need of hospital treatment under the Welfare and Institution[s] Code may nevertheless be capable of transacting business and carrying out his affairs, either during occasional lucid intervals or throughout his hospitalization.'" (Quoting *Hsu v. Mt. Zion Hosp*. (1968) 259 Cal.App.2d 562, 572–573.) We also agree there is no explanation why plaintiff was able to submit a timely claim to the City of Visalia in January 2021, yet somehow allegedly incapable of submitting a claim to the County of Tulare.

### B. Federal Claims

Causes of action based on federal law are not subject to the prelitigation requirements of the Government Claims Act. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 842.) The legal sufficiency of plaintiff's claims under section 1983 and the ADA are determined by federal law. (See *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471; *Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563.)

"The basic principles of federal law for pleading a cause of action are similar to California's. Rule 8(a) of the Federal Rules of Civil Procedure (28 U.S.C.) provides that a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief and a demand for the relief sought. A motion to dismiss may assert a 'failure to state a claim upon which relief can be granted.' (Fed. Rules Civ. Proc., rule 12(b)(6), 28 U.S.C.)" (*Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193, 254.) "A motion to dismiss pursuant to Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.) is the equivalent of a demurrer." (*Metabyte*, *Inc. v. Technicolor S.A.* (2023) 94 Cal.App.5th 265, 274.)

Federal law differs from the California approach insofar as "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" (*Estelle v. Gamble* (1976) 429 U.S. 97, 106.) The federal standard also requires that a complaint "state a claim to relief that is *plausible* on its face." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570, italics added.) "This facial plausibility standard is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (*Martinez v. City of Clovis*, *supra*, 90 Cal.App.5th at p. 254, quoting *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678.) "Determining whether a claim is plausible is a context-specific task requiring the court to draw on its judicial experience and common sense." (*Martinez*, at p. 254.)

### 1. Section 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States. To state a claim under [section] 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law."

26.

(*Long v. County of Los Angeles* (9th Cir. 2006) 442 F.3d 1178, 1185.) Plaintiff's complaint generally alleges violations of her rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

Regarding the HHSA worker sued as "Lupee," the County defendants point to the admission in paragraph 75 of the complaint that Lupee "was present at the scene (at Plaintiff's house) but did not interact with Plaintiff." We agree Lupee's mere presence is not enough. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." (*Taylor v. List* (9th Cir. 1989) 880 F.2d 1040, 1045.) Government employees "are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act." (*Monteilh v. County of Los Angeles* (C.D.Cal. 2011) 820 F.Supp.2d 1081, 1089, citing *Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 936.)

Plaintiff's theory of liability against Lupee is set forth on page 71 of the operative complaint, and all allegations involve a failure to act. Some of the contentions allege a failure to report wrongdoing after it occurred, while others fault Lupee for failing "to anticipate retaliation going on against Plaintiff and did not being proactive in taking the first step is to prevent wrongdoing." (*Sic.*)

For police officers, inaction or failure to object despite awareness of a plan to commit the alleged violation can support a section 1983 claim in combination with "*some affirmative physical support at the scene of the alleged violation.*" (*Monteilh v. County of Los Angeles*, *supra*, 820 F.Supp.2d at p. 1089, italics added; see *id.* at p. 1090 [citing authorities].) Lupee is alleged to be a "crisis worker," and the complaint fails to plead any allegations of affirmative physical support during the alleged violation. The bare allegations of Lupee's involvement in an overarching conspiracy do not permit "the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, *supra*, 556 U.S. at p. 678.) "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

27.

unlawfully. [Citation.] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (*Ibid.*) Therefore, the allegations are insufficient to state a section 1983 claim against Lupee.

As for the County of Tulare, a "municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (*Connick v. Thompson* (2011) 563 U.S. 51, 60.) But such entities "are not vicariously liable under [section] 1983 for their employees' actions." (*Ibid.*) "Plaintiffs who seek to impose liability on local governments under [section] 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (*Ibid.*, quoting *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 691.)

"A policy can be one of action or inaction." (*Long v. County of Los Angeles*, *supra*, 442 F.3d at p. 1185.) Both require "practices of sufficient duration, frequency and consistency." (*Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 918.) In other words, liability "may not be predicated on isolated or sporadic incidents." (*Ibid.*) A policy of inaction, which is typically pleaded in terms of a failure to train or deliberate indifference, "'is a stringent standard of fault'" that ordinarily requires "[a] pattern of similar constitutional violations." (*Connick v. Thompson*, *supra*, 563 U.S. at pp. 61, 62.) "Courts are required to 'adhere to rigorous requirements of culpability and causation,' lest 'municipal liability collapse[] into *respondeat superior* liability.'" (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1119.)

The complaint merely alleges, "Plaintiff is entitled to sue Tulare and Visalia city when the constitutional violation was a custom or policy of the municipality, the municipality can be ok sued, too." (*Sic.*) We read this statement as a partial statement of the law, not an allegation of the required elements of a *Monell* claim. (See *Monell v. New York City Dept. of Social Services*, *supra*, 436 U.S. at p. 691.) The Ninth Circuit Court of

Appeals has held, specifically with regard to *Monell* claims, that "'allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" (*AE ex rel. Hernandez v. County of Tulare* (9th Cir. 2012) 666 F.3d 631, 637.)

Furthermore, there are no allegations of liability under a failure-to-train theory. As such, the complaint also fails to state a section 1983 claim against the County of Tulare. Plaintiff does not explain how the defects could be cured by amendment, so reversible error has not been shown.[2]

### 2. *"Disability Discrimination In Violation of The Americans with Disabilities Act"*

Liberally construed, plaintiff's purported 12th cause of action attempts to state a claim under title II of the ADA and/or section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act) (29 U.S.C. § 794). However, the allegations and theory of liability are very difficult to comprehend.

To maintain a cause of action under title II of the ADA, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." (*Duvall v. County of Kitsap* (9th Cir. 2001) 260 F.3d 1124, 1135.) Similarly, under section 504 of the Rehabilitation Act, the plaintiff must show (1) he or she is disabled; (2) he or she is otherwise qualified to receive the benefits of a public entity's services, programs, or activities; (3) he or she was denied such benefits by reason of his or her disability; and (4)

---

[2]The County defendants' demurrer was asserted on grounds that also included another action pending in federal court between the same parties on the same cause of action. (Code Civ. Proc., § 430.10, subd. (c).) The trial court failed to address this issue. In any event, the County defendants seem to have abandoned the argument on appeal.

the program receives federal financial assistance.  (*Weinreich v. Los Angeles County* (9th Cir. 1997) 114 F.3d 976, 978.)

The relevant portion of the operative complaint (pp. 103–107) contains vague allegations of disability and discrimination, and there are repeated references to "Heritage Oak, Kaweah Hospital & HHSA, Dr. Benjamin, Dr. Mark Said, and Lupee."  However, the complaint makes abundantly clear plaintiff did not seek out the services of these parties and, moreover, she wanted them to leave her alone.  Regardless, there is no articulation of a qualifying disability.  Also missing are required allegations of being denied "meaningful access" to the County defendants' services, programs, or activities.  (*K.M. ex rel. Bright v. Tustin Unified Sch. Dist*. (9th Cir. 2013) 725 F.3d 1088, 1102.)  Plaintiff does not explain how the defects could be cured by amendment, so reversible error has not been shown.

## III.    Claims Against the Healthcare Defendants

The responsive brief on appeal filed by Kaweah Health Medical Center (KHMC) and Dr. Said alleges as follows:

> "KHMC is part of an eight-campus public health care district providing health services to its community pursuant to California Health and Safety Code section 32000, *et seq.*  Kaweah Health is a 'public entity' within the meaning of California Government Code section 811.2, and a 'local public entity' under California Government Code section 900.4.  Dr. Said was, at all times relevant to this action, a public employee employed by KHMC as a resident physician."

Pursuant to the quoted contentions, KHMC and Dr. Said argue plaintiff's state law claims against them are subject to the requirements of the Government Claims Act and time-barred for that reason.  If the contention regarding their status is true, the argument is meritorious for the reasons articulated above regarding the County defendants.  However, despite having asserted those arguments below, the trial court sustained KHMC's and Dr. Said's demurrer for entirely different reasons.  Also, their alleged

entitlement to a judgment based on the Government Claims Act is not evident on the face of the pleadings.

The only evidence in the record supporting the alleged governmental status is a notation on the first page of KHMC's and Dr. Said's demurrer: "EXEMPT FROM FILING FEES [¶] [Gov. Code §6103]." (Boldface omitted.) We have not been asked to take judicial notice of their governmental status, nor does the record indicate such a request was made to the trial court. In the absence of further evidence beyond the representations in their briefing, we will not take judicial notice of the alleged facts sua sponte. On the other hand, plaintiff did not oppose the demurrer of KHMC and Dr. Said, nor did she request oral argument despite the tentative ruling to sustain the demurrer without leave to amend. As will be explained, we conclude plaintiff's challenge to the demurrer ruling is forfeited.

Neither Heritage Oaks Hospital nor Dr. Benjamin allege governmental status. However, their demurrers to the operative complaint were also unopposed. Although plaintiff filed an untimely opposition to Dr. Benjamin's demurrer to the original complaint, her filing of the amended complaint superseded the earlier version, "which cease[d] to perform any function as a pleading." (*Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 384; accord, *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 ["'Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court'"].) And despite Dr. Benjamin's first demurrer being partially sustained without leave to amend, plaintiff reasserted those same claims in the operative complaint (with arguable exception of "Vicarious Liability" and "Conspiracy"). Plaintiff not only refrained from opposing the demurrers to the amended complaint, she declined to request oral argument despite the tentative ruling to sustain them without leave to amend. We will treat as forfeited the challenges to Heritage Oaks Hospital's and Dr. Benjamin's demurrers as well.

31.

In California, "self-represented litigants are held to the same standard of knowledge of law and procedure as an attorney." (*Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 406, fn. 5.) "[M]ere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) A contrary approach "would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Id*. at p. 985.)

"'A judgment or order of the lower court is *presumed correct*.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.) Therefore, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Put differently, "we ignore arguments, authority, and facts not presented and litigated in the trial court" and treat them as waived or forfeited. (*Bialo v. Western Mutual Ins. Co*. (2002) 95 Cal.App.4th 68, 73.)

"In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack." (*JRS Products*, *Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) Accordingly, arguments not raised in an opposition to a demurrer are forfeited. (E.g., *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192.) Failing to oppose a motion and failing to appear at the motion hearing likewise forfeits any subsequent challenges to the motion ruling. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.) Such a result is especially appropriate when a party receives the judge's tentative decision and refrains from contesting it. (Cf. *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 [in a posthearing

context, "when a trial court announces a tentative decision, a party who failed to bring any deficiencies or omissions therein to the trial court's attention forfeits the right to raise such defects or omissions on appeal"].)

Apart from her failure to oppose the healthcare defendants' demurrers, plaintiff's opening brief (she did not file a reply brief) is confounding. The information is haphazardly presented, and whatever cogent argument may lie within is difficult to ascertain. For instance, pages 11 through 34 mostly consist of single-sentence paragraphs asserting error without argument or authority. When citations are provided, they are to pages in the clerk's transcript corresponding to the operative complaint. The following examples are illustrative:

> ". Tulare Superior Court in error and abuse discretion in establishing that plaintiffs failed to demonstrate that leave to amend could cure the defect in the First Ammended complaint( from now on refer as FAC )" (*Sic*.)

> ". Tulare Superior Court in error and abuse discretion sustaining the demurrer and not granting leave to amend the plaintiff's causes of action (3) Medical Malpractice (4) Professional Negligence (5) Unprofessional Conduct (9) Personal injury based on the statute of limitation in 340.4(see the record on appeal pgs 550,551-553,607-612,612-614,614-617,618-640,644-647)" (*Sic*.) (Boldface omitted.)

Pages 35 through 37 of the opening brief (and part of p. 38) are devoted to the standard of review. The next section, labeled "The legal analysis demonstrated in FAC," begins on page 38 and continues through page 41. Here there is ample citation to case law, but little else. The following example is illustrative (boldface omitted):

> "Professional Liability. (Bohan v. Hughes, 828 P.2d 745, 760 (Alaska 1992). See also Cummings v. Sea Lion Corp., 924 P.2d 1011 (Alaska 1996) (Record on appeal pg 551)

> ".Punitive damages (Grimshaw v. Ford Motor Co. (1981) 119 Cal. App.3d 757, 810.) (see Record on appeal pg 551)

"Battery.

"(College Hospital, Inc. v. Superior Court (1994) 8 Ca1.4th 704, 709) Schoendorff v. Society of New York Hospital: [Schoendorff v. Society of New York Hosp., 105 N.E. 92, 93 (N.Y. 1914) (see Record on appeal pg 552)

"Right to exercise consent

"1987 case of Riese v. St. Mary's Hospital and Medical Center, This case was a class action suit brought in the name of person Eleanor Riese by the California ACLU.[3] (see Record on appeal pg 552)

". Ultimate facts' showing an entitlement to exemplary damages. (Clauson v. Superior Court (1998) 67 Cal.App.4th 1253, 1255.) (see Record on appeal pg 554)
".See Vikse v. Flaby, 316 N.W.2d 276, 284 (Minn. 1982) ( see Record on appeal pg 608)"  (Boldface omitted.)

Plaintiff's appellate brief concludes with a "procedural history" section at pages 41 through 47, and a "Statement of Facts" in the remainder of page 47 through page 48.

"'The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.… [E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'"  (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

"The appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than briefing them on appeal.  [Citation.]  And the appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited."  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)  "In addition, citing cases without any discussion of their application to the present case results in forfeiture."  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

"We are not required to examine undeveloped claims or to supply arguments for the litigants."  (*Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at p. 52.)  The quoted

rules are "'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.'" (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 656.)  Plaintiff's inadequate briefing provides an independent ground for affirming the judgments.

## DISPOSITION

The judgments are affirmed.  The parties shall bear their own costs on appeal.


PEÑA, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.